J-A11042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TONY  EDWARDS | : | |
| | : | |
| Appellant | : | No. 14 MDA 2017 |

Appeal from the Judgment of Sentence November 8, 2016
in the Court of Common Pleas of Luzerne County
Criminal Division at No.:  CP-40-CR-0004026-2015

BEFORE:   STABILE, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                              **FILED JULY 20, 2018**

Appellant, Tony Edwards, appeals from the judgment of sentence imposed after his conviction of two counts of criminal attempt to commit homicide.[1]  We affirm.

The relevant facts and procedural background of this case follow.  On April 4, 2015, Appellant and co-defendant, Wandalee Balcacer, conspired to, and did, confront victims Sherry Ann Rivera and Izhar Ramos-Ramirez[2] about drugs Rivera allegedly stole from Ms. Balcacer, and money she earned from their subsequent sale.  (**See** N.T. Trial, 404-05, 887).  Appellant and Ms.

---

[1] 18 Pa.C.S.A. §§ 901, 2501(a).

[2] At trial, the victims were referred to as "China" and "Izzy."  (**See** N.T. Trial, 9/19/16, at 180, 400).

---

\*   Retired Senior Judge assigned to the Superior Court.

Balcacer threw the victims to the ground, and Appellant shot them, wounding Ramirez in the head and Rivera in the head and upper back. (**See id.** at 387, 392).

The Commonwealth filed an information against Appellant and Ms. Balcacer on December 8, 2015, which contained the aforementioned charges, plus criminal conspiracy to commit homicide, and persons not to possess firearms. On May 4, 2016, the Commonwealth filed a motion to consolidate the cases for trial pursuant to Pennsylvania Rule of Criminal Procedure 582.[3] The court granted the motion on May 19, 2016 without defense objection. (**See** Order, 5/19/16). On June 20, 2016, Appellant's counsel filed a motion either to preclude the testimony of the Commonwealth's witness or for the appointment of conflict counsel. On June 21, 2016, the trial court permitted Appellant's counsel to withdraw. On June 30, 2016, conflict counsel entered her appearance.

On September 6, 2016, Appellant filed a motion to sever his case from Ms. Balcacer's case.[4] On September 9, 2016, the court held a hearing on Appellant's motion, which alleged that he would suffer prejudice if the cases were not severed, because testimony regarding his prior gang affiliation would

---

[3] Rule 582 provides, in pertinent part, that "[o]ffenses charged in separate indictments or informations may be tried together if . . . the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1)(b).

[4] Appellant also filed a motion to sever the firearms charges from his jury trial, which the court granted on September 9, 2016.

then be entered into evidence. (*See* Motion to Sever, 9/06/16, at 2-4). The court denied Appellant's motion. (*See* N.T. Hearing, 9/09/16, at 21). At trial, co-defendant's brother, Felipe Nerry Balcacer, testified that he and Appellant became friends while at a halfway house in Philadelphia. (*See* N.T. Trial, at 785-88). In an effort to help his friend obtain housing after his release, Mr. Balcacer testified that he asked his sister, co-defendant Ms. Balcacer, if Appellant could temporarily stay with her. (*See id.* at 793-94). Ms. Balcacer agreed to the arrangement, and Appellant temporarily moved into her home in Wilkes-Barre. (*See id.* at 794-95).

On September 19, 2016, following trial, the jury convicted Appellant of two counts of criminal attempt to commit homicide. On November 8, 2016, the trial court sentenced Appellant to a term of not less than forty nor more than eighty years' incarceration. On November 14, 2016, the Commonwealth withdrew the charges for the firearms violations. Appellant filed a timely motion for modification of his sentence that the court denied on November 28, 2016. Appellant timely appealed.[5]

Appellant raises one question for this Court's review: "Whether the trial court erred in denying trial counsel's motion to sever Appellant's trial from his co-defendant's trial, causing undue prejudice to the Appellant, as his co-

---

[5] On May 10, 2017, Appellant filed a timely statement of errors complained of on appeal pursuant to the trial court's order. *See* Pa.R.A.P. 1925(b). The court filed an opinion on August 9, 2017. *See* Pa.R.A.P. 1925(a).

defendant called her brother, who testified that he had met Appellant in a halfway house[?]" (Appellant's Brief, at 6) (unnecessary capitalization omitted).

It is well-settled that:

> [A] motion for severance is addressed to the sound discretion of the trial court, and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice.

***Commonwealth v. Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010), *appeal denied*, 5 A.3d 818 (Pa. 2010) (citation omitted).

Pennsylvania Rule of Criminal Procedure 583 provides: "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." ***Dozzo***, ***supra*** at 902 (citation omitted). Further:

> The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

***Id.*** (citation omitted).

Appellant maintains that he "made a showing prior to trial that it was likely that his co-defendant would produce evidence that tended to demonstrate . . . that he had a prior criminal history that would have otherwise been withheld under Pa. R.E. 404(b)." (Appellant's Brief, at 10). We disagree.

> Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. [*See*] Pa.R.E. 404(b)(1) (providing: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). Nevertheless:
>
> > [E]vidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, **evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts**.

*Dozzo*, *supra* at 902 (citing Pa.R.E. 404(b)(2)) (case citations and most quotation marks omitted; emphasis added).

In Appellant's motion to sever, he raised concerns about Ms. Balcacer's introduction of evidence regarding Appellant's gang affiliation. (*See* Motion to Sever, at 2-4). At the hearing on the motion, Appellant's counsel reiterated concerns about the gang evidence issue, as well as the potential prejudice that could arise if Ms. Balcacer did not testify, and counsel introduced her

statements through her brother's testimony.[6] (***See*** N.T. Hearing, 9/09/16, at 6, 18-19). However, Ms. Balcacer's counsel responded that she did not intend to introduce evidence of Appellant's gang affiliation because it was irrelevant, but that Mr. Balcacer would testify, *inter alia*, that he met Appellant at a halfway house as part of the development of the case's history. (***See id.*** at 11-12). Based on the argument presented at the hearing, the court denied Appellant's motion, stating:

> . . . Based on what I'm hearing, I don't hear any grounds for severance. Anything you're raising is merely speculative and obviously if some issue comes up during the trial, parties can make objections as done at almost every trial. . . .

(***Id.*** at 20).

At trial, Mr. Balcacer testified, in pertinent part, that he befriended Appellant in a halfway house in Philadelphia. (***See*** N.T. Trial, at 786-88). When Appellant was due to be released, Mr. Balcacer contacted Ms. Balcacer about providing him with a place to stay "while he gets on his feet[.]" (***Id.*** at 794). Thereafter, Appellant and Ms. Balcacer met each other when he "went to Wilkes-Barre to live with [her] . . . for a temporary time." (***Id.*** at 795; ***see id.*** at 794).

This reference to the halfway house was not evidence precluded by Rule 404(b). It merely was "part of the history of the case and form[ed] part of

---

[6] Ms. Balcacer did testify at trial, and Appellant's counsel thoroughly cross-examined her. (***See*** N.T. Trial, at 877-982).

the natural development of the facts." *Dozzo*, *supra* at 902 (citations omitted). Additionally, immediately after Mr. Balcacer's direct testimony, the court provided the jury with a cautionary instruction, in which it stated:

> . . . You have just heard certain testimony indicating that Felipe Balcacer met [Appellant], and established a relationship with him while they were living together in a halfway house. That testimony is provided to you and to be considered by you for certain limited purposes and only for those purposes in understanding the natural development of the facts, history and chronology of the case and the sequence of events in this matter, and it may assist you in judging credibility of certain witnesses who testify in this matter. You are not to regard that evidence as showing that [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer his guilt. So, again, I caution you that you're only being offered that testimony for a limited purpose and to consider it for those limited purposes only and not as any type of evidence of bad character or . . . criminal tendencies.

(N.T. Trial, at 837). The jury is presumed to have followed this instruction. *See Commonwealth v. Jones*, 668 A.2d 491, 504 (Pa. 1995), *cert. denied*, 519 U.S. 826 (1996).

Based on all of the foregoing, we discern no abuse of discretion by the trial court. The Commonwealth charged Appellant and Ms. Balcacer with criminal conspiracy. Both individuals participated in the same transaction constituting the offense. Mr. Balcacer's testimony that he met Appellant at a halfway house was not testimony about another crime, wrong or act. Instead, it was introduced to provide "the history of the case and form[ed] part of the natural development of the facts." *Dozzo*, *supra* at 902 (citations omitted). Appellant has failed to meet his burden of establishing prejudice justifying

severance.  ***See id.*** at 901.  Therefore, we conclude that the trial court did not manifestly abuse its discretion in denying Appellant's motion to sever where the denial did not result in prejudice that was "greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime."  ***Id.*** at 902 (citation omitted).  Appellant's issue does not merit relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/20/2018